**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

W.C. BURTON and BARBARA BURTON                                    **PLAINTIFFS**

v.                                                    **Civil Action No. 3:14-cv-00118-MPM-SAA**

OCWEN LOAN SERVICING, LLC,
NATIONSTAR MORTGAGE, LLC, and
FEDERAL HOME LOAN MORTGAGE
CORPORATION                                                      **DEFENDANTS**

<u>**MEMORANDUM OPINION**</u>

This matter comes before the Court for consideration on the *Motion for Summary Judgment* [33], filed in the above-styled case on behalf of defendants Nationstar Mortgage, LLC, ("Nationstar") and Federal Home Loan Mortgage Corporation ("Freddie Mac")(collectively, the "Defendants").[1]  The Motion for Summary Judgment and accompanying *Memorandum in Support of Nationstar Mortgage, LLC and Federal Home Loan Mortgage Corporation's Motion for Summary Judgment* (collectively with the Motion for Summary Judgment, the "Motion") were filed on May 14, 2015.  On June 11, 2015, W.C. and Barbara Burton (the "Plaintiffs") filed their *Plaintiffs' Response to Defendants Nationstar Mortgage, LLC and Federal Home Loan Mortgage Corporation's Motion for Summary Judgment* [38] and *Plaintiffs' Memorandum in Opposition to Defendants Nationstar Mortgage, LLC and Federal Home Loan Mortgage Corporation's Motion for Summary Judgment* [39] (collectively, the "Response").  The Defendants filed *Nationstar Mortgage, LLC and Federal Home Loan Mortgage Corporation's Rebuttal to Plaintiff's Response to Motion for Summary Judgment* (the "Rebuttal")[43] on June 22, 2015.  Upon consideration of the Motion, Response, Rebuttal, related filings, evidentiary

---

[1] Ocwen Loan Servicing, LLC, originally a named defendant, has been dismissed without prejudice by agreement of the parties pursuant to the *Order Dismissing Party by Reason of Settlement* [45], entered on August 11, 2015.

submissions, and relevant law, the Court concludes that no hearing on the matter is necessary. The Court is prepared to rule.

## I.    <u>JURISDICTION</u>

Plaintiffs are Mississippi residents and the subject property is located in Mississippi. Defendant Nationstar Mortgage, LLC is a Delaware corporation registered to do business in the state of Mississippi.  Defendant Federal Home Loan Mortgage Corporation is a government-sponsored enterprise with principal offices located in McLean, Virginia.  The original loan amount was $387,000.00, and there appears to be no question that the value of the property (whether it is gauged by purchase price, market value, or outstanding principal and interest) exceeds $75,000.00.  Accordingly, jurisdiction is appropriate pursuant to 28 U.S.C. § 1332(a). *See e.g. Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977) (holding the "[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.");  *Waller v. Prof'l Ins. Corp.,* 296 F.2d 545, 547-48 (5th Cir. 1961) (holding that "when the validity of a contract or a right to property is called into question in its entirety, the value of the property controls the amount in controversy.").

## II.    <u>FACTUAL BACKGROUND</u>

Plaintiffs filed the *Complaint* [1] on May 31, 2015, alleging that their real property had been wrongfully foreclosed upon.  In 2007, the Plaintiffs purchased a piece of real property with financing provided by Taylor, Bean & Whitaker Mortgage Corp ("TBW").  As part of that transaction, the Plaintiff signed a promissory note and executed a deed of trust, secured by the property.  The parties do not dispute that the following language is contained in the original deed of trust:

"MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender [TBW] and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument.

....

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.

....

Borrower [Plaintiffs] understands and agrees that MERS holds only legal title to the interests granted by the Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) as the right: to exercise any or all of those interest, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

[34; Ex. B]. The Deed of Trust was filed in the land records of DeSoto County, Mississippi, on July 27, 2007. *Id.*

On July 20, 2012, the Deed of Trust was assigned to Ocwen Loan Servicing, LLC, by MERS. MERS assigned to Ocwen "all its rights, title and interest in and to a certain mortgage… [t]ogether with the debt and claim secured by said Dead of Trust." [31; Ex. D]. On June 10, 2013, Ocwen assigned to Nationstar, "the described Mortgage/Deed of Trust with all interest secured thereby, all liens and any rights due or to become due thereon…" [31; Ex. E]. The Plaintiffs eventually defaulted on the loan, and on March 11, 2014, Nationstar's substitute trustee conducted a foreclosure sale of the property. At the sale, Nationstar was the highest bidder. Nationstar thereafter assigned and transferred its winning bid to Freddie Mac.

It is the Plaintiffs' contention that the first assignment by MERS to Ocwen was invalid, as MERS did not have the authority to assign the Deed of Trust. According to the Plaintiffs, TBW never assigned the Deed of Trust to any third party, and that, upon information and belief, TBW is still the holder of the Note. Plaintiffs further assert that because this first assignment

was allegedly invalid, so too was the subsequent assignment from Ocwen to Nationstar on June 10, 2013. By the Plaintiffs' logic, it would follow that the foreclosure undertaken by Nationstar would be invalid as well.

Further, the Plaintiffs claim that even if the assignments had been validly conducted, Nationstar violated certain provisions of the Home Affordable Modification Program ("HAMP") (which Plaintiffs assert are supplementary to Mississippi foreclosure law), thereby rendering the foreclosure invalid. More specifically, the Plaintiffs allege that at the time of the foreclosure, their home loan modification application was still pending, and that "a foreclosure can not occur while a homeowner is under consideration for assistance through the HAMP program." [1]. Both the invalid assignment claim, as well as the HAMP claim, go to the Plaintiffs' overarching assertion that their residence was wrongfully foreclosed upon.

Defendants counter Plaintiffs' claims by asserting that the language contained in the Deed of Trust grants MERS the authority to transfer the Deed of Trust through assignment as a matter of law. The first assignment being valid, all subsequent transfers (and eventual foreclosure by Nationstar) would have also been valid. Defendants further assert that the evidence and Plaintiffs' own depositions directly contradict the claim that any HAMP application was pending which might have prevented the foreclosure from taking place.

For the reasons set forth in greater detail below, the Court finds that as a matter of law, the Plaintiffs' claims are unsustainable and summary judgment is due to be granted.

### III.    CONCLUSIONS OF LAW

Summary judgment is appropriate when the movant can show that there is "no genuine issue of material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury

could return a verdict for the non-moving party." *Burfield v. Brown, Moore & Flint, Inc.*, 51 F.3d 583, 588 (5th Cir. 1995). When deciding a motion for summary judgment, the facts and evidence are taken in a light most favorable to the non-moving party. *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 386 (5th Cir.2007). The court must "refrain from making credibility determinations or weighing the evidence." *Coury v. Moss*, 529 F.3d 579, 584 (5th Cir. 2008).

Although a movant is charged with "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact," the movant need not also negate the elements of the nonmovant's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). Once the moving party meets its burden, the non-movant must then go beyond the pleadings and designate specific facts to show an issue for trial. *Id.* at 325. The nonmoving party cannot rely on metaphysical doubt, conclusive allegations, or unsubstantiated assertions but rather must show that there is an actual controversy warranting trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Although factual controversies are resolved in favor of the non-movant, that is only the case where there are actual controversies, each partying having submitted evidence of contrary facts. *Id.* In the absence of proof of a genuine issue of material fact, the court does not "assume that the nonmoving part could or would prove the necessary facts." *Id.*

## A. Wrongful Foreclosure

As a preliminary matter, it is necessary to address the issue of wrongful foreclosure in general. It is well established that "[u]nder Mississippi law, a wrongful foreclosure occurs when a foreclosure is attempted solely for a malicious desire to injure the mortgagor or the foreclosure

is conducted negligently or in bad faith to the mortgagor's detriment." *Teeuwissen v. JP Morgan Chase Bank, N.A.*, 902 F. Supp. 2d 826, 833 (S.D. Miss. 2011). A wrongful-foreclosure claim may also be based on "procedural shortcomings in the foreclosure process." *Id.* at 834.

Although the Plaintiffs do not fully clarify under which theory they are traveling, it is the Court's interpretation that any "malicious desire to injure" theory may be disregarded. No such allegations, or even allusions, have been raised by the Plaintiffs. Further, in Barbara Burton's April 29, 2015 deposition, Mrs. Burton said that she did not believe that Nationstar had damaged her in any way, nor had they committed any wrongful acts against her. [33; Ex. H., Pg. 7].[2] Rather than a "malicious desire to injure mortgagor," the Plaintiffs ostensibly predicate their wrongful foreclosure claim on procedural shortcomings in the chain of assignments, and/or bad faith and negligence in the eventual foreclosure.

## B. Invalid Assignment

Plaintiffs allege that the Deed of Trust was improperly transferred from the original mortgagee by MERS. In support of this claim, the Plaintiffs advance two (albeit similar) theories. First, Plaintiffs claim that MERS lacked the authority to assign the Deed of Trust because no such power was conferred in the original loan documents. Second, Plaintiffs contend that any assignment undertaken first be MERS, and subsequently by the other defendants, was invalid as there is no evidence that the underlying Note was also assigned.

---

[2] From the April 29, 2015 Deposition of Barbara Burton:

Question:    Okay. Do you believe that Nationstar has damaged you in any way?
Answer:      No, I don't. I just feel that Nationstar was a loan company that was just put in the place of Ocwen.
Question:    Okay. But you don't believe Nationstar has committed any wrongful acts against you?
Answer:      No.

[33; Ex. H., Pg. 7]

**1. MERS Lacked Authority to Assign Deed of Trust**

 In the Complaint, the Plaintiffs assert that "there is no documentation from TBW naming MERS as its nominee…" [1]. However, a plain reading of the deed of trust reveals just the contrary:

> "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender [TBW] and Lender's successors and assigns.
> ….
> The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS.

[34; Ex. B]. The Plaintiffs make no allegations that the above-cited language was not part of the Deed of Trust. In fact, the Plaintiffs cite to this specific language in their own pleadings. Rather, the Plaintiffs raise issue with the lack of definitions for the terms "nominee" and "beneficiary," asserting that "[t]his case turns on whether MERS' status as nominee and/or beneficiary provides it with the authority to assign the deed of trust on [TBW's] behalf." [1; Pgs. 4-5].

The failure to define the terms "nominee" and "beneficiary" is not fatal to MERS' ability to assign the Deed of Trust. The Deed of Trust specifically empowers MERS with "the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument." [34; Ex. B]. The Deed of Trust further provides: "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one more times without prior notice to the Borrower." [1].

The legal effect of this language is not a novel question. Recently, in *Brisby v. Moynihan*, the U.S. District Court for the Southern District of Mississippi held that *identical* language in a deed of trust empowered MERS with the right to assign the Deed of Trust to a

third party. 2014 WL 2940874 (S.D. Miss. June 30, 2014). Courts throughout the country have also reached the same conclusion, routinely upholding MERS's ability to transfer deeds of trust based on similar, if not identical, language contained in a deed of trust. *See, e.g., Deckys v. BAC Home Loans Servicing LP*, 2013 WL 3081947, at *9 (D. Idaho June 18, 2013) (rejecting argument that MERS cannot assign interests based on its "nominee" status); *Reynolds v. Bank of America, N.A.*, 2013 WL 1904090, at *8 (N.D. Tex. May 8, 2013) (holding that – in reference to identical deed of trust language – "[b]ecause the plain language of the deed of trust specifically provided that MERS would have the power of foreclosure and sale, MERS had the power of foreclosure and sale, which was passed on to [subsequent assignee] upon MERS's assignment."); *Hudson v. Citimortgage, Inc.*, 2013 WL 6284045, at *3 (N.D. Tex. Dec. 2, 2013) *aff'd*, 582 F. App'x 537 (5th Cir. 2014) (holding that "[a]s the beneficiary of the Deed of Trust, MERS held legal title to the Property and had the right to foreclose and sell the Property upon default, and therefore MERS had the inherent authority to assign the Note and Deed of Trust."); *Barcenas v. Federal Home Loan Mortg. Corp.*, 2013 WL 286250 (S.D. Tex. Jan. 24, 2013) (same); *Hobson v. Wells Fargo Bank, N.A.*, 2012 WL 505917, at *4 (D. Idaho Feb. 15, 2012) (reviewing identical language in a deed of trust and holding that "[t]he conclusion that MERS did not have authority to assign the Deed of Trust directly contradicts the trust deed language.").

The Plaintiffs do not dispute the inclusion of the above-listed language in the Deed of Trust, they merely offer an alternative interpretation of that language and its supposed legal significance. However, the Plaintiffs fail to provide any legal basis to support the claim advanced or interpretation suggested. Instead, they rest solely on conclusory allegations, supported only be circular (and unsubstantiated) arguments. Even conducting its own research of the issue, the Court cannot find any legally defensible basis for the Plaintiffs' claim.

There is also no evidence that the Defendants acted negligently in the various assignments of the Deed of Trust. Plaintiffs' negligence claim appears to rest solely on the contention that MERS did not have authority to assign the Deed of Trust. There is no other basis for negligence but for the claim that MERS assigned the Deed of Trust when they should have known that they did not possess the right or ability to do so. Thus, MERS's authority having been established, the negligence claim ultimately fails.

### 2. "Split the Note" Theory

Plaintiffs also appear to advance what has become known as a "split the note" theory as a basis for their invalid assignment claim. "In order to foreclose, the theory goes, a party must hold both the note and the deed of trust." *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 254 (5th Cir. 2013). According to the Plaintiffs, the foreclosure was invalid as Nationstar did not hold both the Deed of Trust and the underlying note. This separation theory, however, has been repeatedly dismissed by both district and Circuit Courts of Appeals, as well as state courts. *See e.g. Id.*; *Battle v. GMAC Mortg., LLC*, 2011 WL 12465133 (S.D. Miss. Dec. 8, 2011); *EB, Inc. v. Allen,* 722 So. 2d 555, 564 (¶ 35) (Miss. 1998). The Plaintiffs' pleadings lack any legal support to buttress this claim, and the Court can find none in its place. Accordingly, insofar as Plaintiffs are attempting to further such claim, it fails as a matter of law.

The Court may view the evidence in the light most favorable to the non-movant, but it cannot construct an actual controversy where none appears to exist. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 31 ERC 1553 (1990) (resolving actual disputes of material facts in favor of nonmoving party "is a world apart from 'assuming' that general averments embrace the 'specific facts' needed to sustain the complaint.... It will not do to 'presume' the missing facts because without them the affidavits would not establish the

injury that they generally allege"). The Court finds that the Defendants have more than adequately shown an absence of genuine issue of material fact surrounding MERS's valid right to assign the Deed of Trust. Conversely, in response, Plaintiffs have failed to designate specific facts showing a genuine issue for trial.[3] Summary Judgment is therefore warranted on the claim as a matter of law.

## C. HAMP Application

Plaintiffs assert that prior to the assignment from Ocwen to Nationstar, an application was filed on their behalf for a home loan modification through the federal loan modification program HAMP. [1]. As alleged in the Complaint, the Defendants, as mortgage servicers, are required to follow HAMP guidelines, including provisions prohibiting foreclosure on a residence while a HAMP modification application is pending. The Plaintiffs allege that the application was pending when the foreclosure took place on March 11, 2014, and its pending status should have acted as a trigger to halt foreclosure proceedings. Instead, they claim, Nationstar violated its obligations under HAMP guidelines by conducting the foreclosure. Further, defendants Ocwen, Nationstar and Freddie Mac allegedly "conspired to allow Nationstar to violate the HAMP guidelines and allow Freddie Mac to ultimately become the owner of the Plaintiffs' home via wrongful foreclosure." [1].

In the Complaint, Plaintiffs do not cite to any particular section of HAMP in support of their claim.[4] Further, in their response to the motion for summary judgment, Plaintiffs do not address Defendants' Motion as it relates to the HAMP claim, nor is there any mention of HAMP

---

[3] Because the Court finds that the Deed of Trust unquestionably gave MERS the right to assign the Deed of Trust, there is no need to explore whether or not the eventual foreclosure was wrongful under the invalid assignment theory.

[4] The only HAMP provision included in the Complaint is § 201, which provides: "STANDARD INDUSTRY PRACTICE – The qualified loss mitigation plan [i.e. HAMP] issued by the Secretary of State of the Treasury under the Emergency Economic Stabilization Act of 2008 shall constitute standard industry practice ofpurpose of all Federal and State laws."

at all. [39]. Accordingly, it is unclear from the pleadings whether or not the Plaintiffs have intentionally abandoned this claim. However, in the interest of analyzing the Motion and evidence in a light most favorable to the non-moving party, the Court attempts to extrapolate a legally valid basis for Plaintiffs' HAMP claim. However, for the reasons set forth below, the Court finds that the Plaintiffs claim fails as a matter of law on several grounds.

### 1. Standing

To begin, a note on the HAMP program, generally, is warranted:

> HAMP was created by Congress under the Emergency Economic Stabilization Act of 2008 and is governed by guidelines set forth by Fannie Mae and the United States Department of the Treasury. The Servicer Participation Agreements (SPA) between mortgage loan servicers and Fannie Mae require the servicers to perform loan modification and foreclosure prevention services specified in the HAMP Guidelines.

*Speleos v. BAC Home Loans Servicing, L.P.,* 755 F. Supp. 2d 304, 306 (D. Mass. 2010). HAMP Guideline VII, 610.04.04 (under which the Plaintiffs are presumably traveling, though it is not made clear in the pleadings) provides: "[t]o ensure that a borrower currently at risk of foreclosure has the opportunity to apply for HAMP, servicers should not proceed with a foreclosure sale until the borrower has been evaluated for the program and, if eligible, an offer to participate in HAMP has been made." U.S. Dep't of the Treasury, Home Affordable Modification Program (HAMP) Guidelines, VII, 610.04.04.

Though it is not explicitly stated (and is instead couched as a wrongful foreclosure claim), Plaintiffs HAMP theory is, in essence, a breach of contract claim. Hypothetically, the Defendants are bound by certain contractual obligations (HAMP guidelines), which they wrongfully violated or ignored (therefore constituting a breach). However, the SPAs, through which loan servicers such as the Defendants become bound by HAMP guidelines, are contracts between those servicers and the United States Government. The Plaintiffs, as borrowers, are not

named parties to the contract. Accordingly, there remains a question of whether or not the Plaintiffs have standing to bring suit for alleged HAMP violations. Although neither the Plaintiffs nor Defendants have raised the issue of standing, the Court must consider it *sua sponte*. "The standing inquiry focuses on whether the plaintiff is the proper party to bring this suit." *Raines v. Byrd*, 521 U.S. 811, 818, 117 S. Ct. 2312, 2317, 138 L. Ed. 2d 849 (1997).

"It is a well-established principle that '[g]overnment contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries [who may not enforce a contract] unless a different intention is manifested.'" *MacKenzie v. Flagstar Bank, FSB*, 738 F.3d 486, 491 (1st Cir. 2013) (quoting Restatement (Second) of Contracts § 313 cmt. a (1981); *see also Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927, 933 (11th Cir.2013); *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999) ("Parties that benefit from a government contract are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary."); *Price v. Pierce*, 823 F.2d 1114, 1121 (7th Cir.1987).

"The question of whether, for standing purposes, a non-party to a contract has a legally enforceable right therein is a matter of state law." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 981 (11th Cir. 2005) (citing *Miree v. DeKalb County*, 433 U.S. 25, 29–33, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977) (holding that, even when the United States was a party to the contracts at issue, "whether petitioners as third-party beneficiaries of the contracts have standing to sue" was a question of state law, not of federal common law); *Castro Convertible Corp. v. Castro*, 596 F.2d 123, 124 (5th Cir. 1979) (observing that whether "a third-party beneficiary contract is a real party in interest, who, like the ultimate beneficiary, has standing to maintain a suit for breach of contract" is a "state contract law question")).

In order to show breach of contract, a party must show (1) the existence of a valid and binding contract; and (2) that the defendants have broken or breached the contract. *Bus. Commc'ns, Inc. v. Banks,* 90 So.3d 1221, 1224–25 (¶¶ 10–11) (Miss. 2012). However, the Plaintiffs are not explicitly-named parties to the underlying contract. Therefore, under Mississippi law, as a third party, Plaintiffs must show that the contract was made for their direct benefit or that they are an intended third-party beneficiary. *See Rein v. Benchmark Const. Co.*, 865 So.2d 1134, 1145 (Miss. 2004). Incidental beneficiary status by itself will not suffice to create rights against the promisor or promise. *Id.* (citing *Trammell v. State*, 622 So.2d 1257, 1260 (Miss. 1993)).

In *Gerard J.W. Bos & Co., Inc. v. Harkins & Co.,* 883 F.2d 379 (5th Cir. 1989), the Fifth Circuit clarified that in order "[t]o achieve the status of a third‑party beneficiary and thereby avoid the requirement of contract privity, the Supreme Court of Mississippi has expressly held that the plaintiff must show that the condition which is alleged to have been broken was placed in the contract [between third parties] for his direct benefit." *Id.* at 382 (internal quotations omitted). Further,

> [a] person or entity may be deemed a third-party beneficiary if: (1) the contract between the original parties was entered for that person's or entity's benefit, or the original parties at least contemplated such benefit as a direct result of performance; (2) the promisee owed a legal obligation or duty to that person or entity; and (3) the legal obligation or duty connects that person or entity with the contract.

*Simmons Hous., Inc. v. Shelton ex rel. Shelton*, 36 So. 3d 1283, 1286 (Miss. 2010).

Courts have dedicated a considerable amount of time and effort to analyzing a borrower's potential status as a third-party beneficiary as it relates to HAMP-violations claims. To maintain an action as a third party beneficiary, the third party must point to a specific part of the contract which reflects an express or implied intention of the contracting parties to benefit the third party.

*See Montana v. United States,* 124 F.3d 1269, 1273 (Fed. Cir. 1997). "One way to ascertain such intent is to ask whether the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him or her." *Klamath*, 204 F.3d at 1211(citing Restatement of Contracts § 302(1)(b) cmt. d.). The Court finds that beneficiaries would not be reasonable in relying on such a promise.

First, "[u]nder the HAMP, a qualified borrower would not be reasonable in relying on an agreement between a participating servicer and the U.S. Department of Treasury as manifesting an intention to confer a right on the borrower because the agreement does not *require* that the participating servicer modify eligible loans. *Marks v. Bank of Am., N.A.*, 2010 WL 2572988, at *3 (D. Ariz. June 22, 2010). Even Fannie Mae, which is a party with clear rights under the agreement, cannot *force* a participating beneficiary to modify a loan, they may only take action against a participating loan servicer. *Id. See also Simmons v. Countrywide Home Loans, Inc.*, 2010 WL 2635220, at *5 (S.D. Cal. June 29, 2010) (holding that "[q]ualified borrowers such as plaintiffs here cannot reasonably rely on a manifested intent to confer rights upon them since the [HAMP] Agreement does not require that [servicers] modify all eligible loans."). It would be unreasonable and illogical to believe that a borrower could require anything of a servicer which a party to the contract (Fannie Mae) could not. Further, as remarked by one district court, "[i]t is also notable that the HAMP legislation was enacted with the hopes of helping 3 to 4 million homeowners avoid foreclosure." *Villa v. Wells Fargo Bank, N.A.*, 2010 WL 935680, at *3 (S.D. Cal. Mar. 15, 2010) (noting that the potential impact of recognizing such a massive class of beneficiaries is entitled some consideration in countering the inference of intended beneficiary status). To assume that all 3 to 4 million homeowners were intended beneficiaries would be to necessarily frustrate the "purpose of HAMP as an administrative tool to effectuate the goals of

EESA [(Emergency Economic Stabilization Act of 2008)]."[5]  *Marks*, 2010 WL 2572988, at *4 (D. Ariz. June 22, 2010).  Further, permitting those claims would "undermine Freddie Mac's role as the compliance officer for the HAMP."  *Id.*

Second, courts have generally found that parties benefitting from government contracts are presumed to be incidental beneficiaries.  "Government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested."  *Lichterman v. Pickwick Pines Marina, Inc.*, No. 2010 WL 717840, at *6 (N.D. Miss. Feb. 22, 2010)(quoting RESTATEMENT (SECOND) OF CONTRACTS § 313(2) cmt. a)). *Accord MacKenzie*, 738 F.3d at 491; *Klamath*, 204 F.3d at 1211.  There is no evidence that a different intention may be manifested from HAMP.

As stated above, parties who benefit from government contracts are presumed to be incidental beneficiaries, absent clear intent to the contrary.  *Klamath*, 204 F.3d at 1210-11.  "'Clear intent' is not shown 'by a contract's recitation of interested constituencies, [v]ague, hortatory pronouncements, statement[s] of purpose, explicit reference to a third party or even a showing that the contract 'operates to the [third parties'] benefit and was entered into with [them] in mind.'"  *Marks*, 2010 WL 2572988, at *4 (D. Ariz. June 22, 2010) (quoting *County of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237, 1244 (9th Cir. 2009)(internal quotations and citations omitted)).  Although borrowers obviously stand to benefit from loan servicers following the guidelines established in HAMP, there is no clear intent to grant borrowers the right to enforce the agreement – Plaintiffs have failed to point to any such intent, and this Court is unable to read it under the facts and circumstances.  Instead, the reverse is true: "[t]he decision of the contracting parties here specifically to identify themselves and their successors as the contract's beneficiaries evinces their intention to exclude third-party beneficiaries." *MacKenzie*, 738 F.3d at

---

[5] Pub. L. No. 110–343, 122 Stat. 3765 (codified 12 U.S.C. § 5201 *et seq.*).

492. Accordingly, when "[a] right to enforce compliance is not included within 'the four corners of the instrument,'… the presumption against conferring third-party rights has not been effectively rebutted." *Cade v. BAC Home Loans Servicing, LP*, 2011 WL 2470733, at *4 (S.D. Tex. June 20, 2011).

"It is undisputed that defendant lending institutions have an obligation to follow applicable contract laws and HAMP guidelines.  As many courts have noted, however, borrowers do not have standing to challenge compliance by lending institutions." *Id.* at *4.  This Court concludes that the Plaintiffs are incidental beneficiaries of any contractual agreements between the Defendants and U.S. Government. Therefore, they lack the requisite standing to maintain a claim based on an alleged HAMP-compliance violation.[6]

### 2. Private Right of Action

There is also a question of whether or not HAMP creates a private right of action – either express or implied – through which borrower-plaintiffs may attempt to pursue such claims. The First and Eleventh Circuit Courts of Appeals have both found that HAMP does not create a private right of action (either express or implied) through which an incidental beneficiary homeowner might challenge a loan servicer's violations of HAMP regulations.  *See MacKenzie*, 739 F.3d at 493; *Miller v. Chase Home Fin., LLC*, 677 F.3d 1113, 1116 (11th Cir. 2012).  The Seventh Circuit Court of Appeals has rejected the notion of a private right of action under HAMP, though it found that a state law right of action existed under the circumstances. *Wigod v. Wells Fargo Bank, N.A.* 673 F.3d 547 (7th Cir. 2012).  Most importantly, the Fifth Circuit Court

---

[6] In addressing related questions of standing, there has been at least one court to conclude that a borrower-plaintiff did possess the requisite standing to maintain similar claims.  *See e.g. Reyes v. Saxon Mortgage Serv.*, 2009 WL 3738177 (S.D. Cal. Nov. 5, 2009).  However, in that instance, Plaintiff had sufficiently pleaded facts to support his third-party beneficiary status by specifically identifying – and attaching – the underlying contract at issue (as opposed to making generalized references to HAMP as a whole). Such was not the case with the current Plaintiffs or their pleadings.

of Appeals has indicated that HAMP lacks a private cause of action. *Pennington v. HSBC Bank USA, N.A.*, 493 Fed. Appx. 548 (5th Cir. 2012). Perhaps needless to say, numerous District Courts have found the same.[7]

### a. Express Private Right of Action

The Court can first dispose of any argument that HAMP creates an express private right of action. "HAMP is a program established by the U.S. Department of the Treasury, the Federal Housing Finance Agency, Fannie Mae, and Freddie Mac, pursuant to the authority provided in the Emergency Economic Stabilization Act of 2008." *Cade*, 2011 WL 2470733, at *2 (S.D. Tex. June 20, 2011). Toward the goal of facilitating loan modifications, HAMP provides incentives to loan servicers to modify terms of eligible loans. It does not, however, require that servicers make such modifications. Instead, guidelines merely require that lenders consider borrowers for modifications, and halt foreclosures while a potential modification is being evaluated. U.S. Dep't of the Treasury, Home Affordable Modification Program Guidelines (Mar. 4, 2009). The Secretary of the Treasury designated one entity, and one entity only, to conduct compliance assessments of participants – Freddie Mac. *Miller*, 677 F.3d at 1116. Nowhere in the HAMP Guidelines (nor in EESA) is there an express private right of action for individual borrowers. *Id.*

The EESA (the act through which HAMP was created) empowered and directed the Secretary of the Treasury to take certain steps to encourage and facilitate home loan modifications. 12 U.S.C. § 5219. It did not, however, expressly create a private right of action

---

[7] *See e.g. Kim v. Bank of Am., N.A.*, 2011 WL 3563325, at *3 (W.D. Wash. Aug. 11, 2011) (holding that HAMP does not recognize a private right of action against lenders or servicers); *Stolba v. Wells Fargo*, 2011 WL 3444078, at *3 (D.N.J. Aug. 8, 2011) (same); *Coulibaly v. J.P. Morgan Chase Bank, N.A.*, 2011 WL 3476994 (D. Md. Aug. 8, 2011) (same); *Sherman v. Litton Loan Serv., L.P.*, 796 F.Supp.2d 753, 766 (E.D. Va. 2011) ("[T]o the extent plaintiff's complaint implicates HAMP, it must be dismissed due to the lack of any private right of action thereunder.").

for borrowers against loan servicers for alleged grievances. *Ramirez v. Litton Loan Servicing LP*, 2009 WL 1750617, at *1 (D. Ariz. June 22, 2009).

### b. Implied Private Right of Action

In addition to finding that there is no express private cause of action under HAMP, this Court finds that there is no implied private cause of action either. In reading an implied cause of action into a statute, courts should proceed with the utmost caution. "In the absence of clear evidence of congressional intent, [a court] may not usurp the legislative power by unilaterally creating a cause of action." *In re Digimarc Corp. Derivative Litig.,* 549 F.3d 1223, 1230–31 (9th Cir.2008). In determining whether such a cause of action exists, courts should consider the following four factors:

> "First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,' ...—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? ... Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? ... And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?"

*California v. Sierra Club*, 451 U.S. 287, 282, 101 S.Ct. 1775, 1779, 68 L. Ed. 2d 101 (1981)(quoting *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975)).

First, while borrowers such as the Plaintiff may undoubtedly benefit from certain provisions and policies, neither HAMP nor EESA were created for their "especial benefit."

> EESA and HAMP were designed to "provide authority and facilities that the Secretary of the Treasury can use to restore liquidity and stability to the financial system of the United States." 12 U.S.C. § 5201(1). EESA was not passed for the "especial benefit" of struggling homeowners, even though they may benefit from HAMP's incentives to loan servicers.

*Miller*, 677 F.3d at 1116.

Second, there is a dearth of evidence that Congress intended to create a private cause of action under HAMP. "[L]egislative history indicates that the right to initiate a cause of action lies with the Secretary [of the Treasury] via the Administrative Procedure Act. Allowing the Plaintiff to assert a private cause of action would contravene clear legislative intent." *Marks*, 2010 WL 2572988, at *7 (D. Ariz. June 22, 2010) (citing *Alexander v. Sandoval,* 532 U.S. 275, 290, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001), for the proposition that the express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others).

Third, an implied cause of action would be inconsistent with the underlying legislative scheme. As succinctly explained by the Third Circuit, "providing a private right of action against mortgage servicers contravenes the purpose of HAMP—to encourage servicers to modify loans—because it would likely chill servicer participation based on fear of exposure to litigation." *Miller*, 677 F.3d at 1116.

Lastly, "[c]ontract and real property law are traditionally the domain of state law." *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 174, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). Accordingly, the fourth and final consideration weighs against finding an implied private cause of action.

Considering the totality of the above analysis, the Court declines to read an implied cause of action into the statute.

### 3. Pending Application

Assuming, *arguendo*, that Plaintiffs possessed the requisite standing, and/or there was either an express or implied private cause of action included under HAMP, the Court still concludes that the Plaintiffs' HAMP claim fails as a matter of law. The evidence submitted by the parties shows that the Plaintiffs' attempt at a home loan modification was not as simple as

initially presented in the Complaint. The Plaintiffs first submitted a loan modification agreement with Ocwen on February 17, 2010. [33; Ex. E]. In his April 29, 2015 deposition, Mr. Burton admitted that sometime, either in late 2009 or 2010, he received and signed a HAMP agreement. [33; Ex. F]. Thereafter, on August 27, 2012, the Plaintiffs received a letter from Ocwen, informing them that their modification application had been denied as they did not meet a basic eligibility requirement (the "Denial Letter")[33; Ex. G]. *See also* [33; Ex. H] (Mrs. Burton acknowledged during the course of her deposition that the Plaintiffs had received the Denial Letter. Also, Mrs. Burton brought the Denial Letter with her to the deposition). On June 10, 2013, after receipt of the Denial Letter, the Deed of Trust was assigned to Nationstar by Ocwen. [33; Ex. D]. For the reasons set forth above, the Court finds that the Ocwen to Nationstar assignment was validly conducted. Both Plaintiffs acknowledged in their respective depositions that at no point did they make payments to Nationstar once it assumed the role of servicing their loan. [33; Ex. F and H]. They further acknowledged that they did not attempt a home loan modification with Nationstar. Id.

The Plaintiffs acknowledged that they received an initial modification, and later received notice that the modification was denied. Further, they admitted that there were no payments made to Nationstar, nor was there an attempt made with Nationstar to modify the loan. Plaintiffs have failed to show that another modification application was pending at the time of foreclosure. Accordingly, the Court cannot extrapolate a basis for Plaintiffs' claim that Nationstar wrongfully foreclosed on the property while an application was pending. Even construing the evidence in the light most favorable to the Plaintiffs as the non-movant, the Court cannot find justification to defeat the Motion for Summary Judgment. Plaintiffs have failed to meet their obligations to "go

beyond [the] bare allegations to set forth specific facts in support of the essential elements of [their] case." *Mize v. Harvey Shapiro Enterprises, Inc.*, 714 F.Supp. 220, 225 (N.D. Miss. 1989).

## D. Conspiracy

Lastly, paragraph 27 of the Complaint advances a general claim of conspiracy amongst the Defendants: "…Defendants Ocwen, Nationstar and Freddie Mac conspired to allow Nationstar to violate HAMP guidelines and allow Freddie Mac to ultimately become the owner of the Plaintiffs' home via wrongful foreclosure." [1].   In *Farris v. State*, the Mississippi Supreme Court defined the crime of conspiracy as follows: "[c]onspiracy is a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose unlawfully, the persons agreeing in order to form the conspiracy. The offense is complete without showing an overt act in the furtherance of the conspiracy."  764 So.2d 411, 428-29 (Miss. 2000).

Reviewing the pleadings and evidence before it, the Court cannot discern an underlying unlawful purpose, necessary to sustain a claim of conspiracy.   Based on the generalized pleadings and allegations, the only basis for a conspiracy claim is wrongful foreclosure. However, for the reasons set forth above, the Court finds that there is no evidence that a wrongful foreclosure took place – either under the theory of invalid assignment or of HAMP violations.  Accordingly, any conspiracy claim fails as a matter of law.

## IV.    CONCLUSIONS

As the movant advancing a motion for summary judgment, it is the Defendants' obligation to show an absence of genuine issue of material fact.  Once that threshold has been met, it becomes the Plaintiffs' obligation to set forth specific facts showing that there is a genuine issue for trial.  "[T]he plain language of Rule 56(c) mandates the entry of summary

judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S. Ct. at 2552. Based upon the above analysis, the Court finds that the Defendants have carried their initial burden. The Plaintiffs have failed to effectively establish the existence of elements essential to their case and on which they will bear the burden of proof at trial. Accordingly, the Federal Rules of Civil Procedure mandate entry of summary judgment in favor of the Defendants.

Based on the foregoing analysis, the Defendants' Motion for Summary Judgment [33] is **GRANTED**. A separate judgment shall be issued this day pursuant to Fed. R. Civ. P. 58.

SO ORDERED, this the 10th day of September, 2015.


**/s/ MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**